# FRANK E. ROLLMAN *v.* ANNA L. ROLLMAN, ADMINISTRATRIX

[No. 11, October Term, 1938.]

*Decided October 28th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William C. Rogers,* for the appellant.

*George M. White* and *Charles G. Page,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

A surviving partner and the administratrix of a deceased partner present in this case questions of money to be paid over for the decedent's share in the partnership business, and, principally, a question whether the proceeds of life insurance policies taken out by the partners while both lived, on the life of the decedent to the survivor as beneficiary, are to be paid in representation of the decedent's interest. After a hearing on a bill of the administratrix in equity, for dissolution of the partnership and an accounting, an answer by the surviving partner, and testimony, the chancellor decreed that the proceeds of the policies and half of other assets should be paid over, and the defendant, the surviving partner, appeals.

Frank E. Rollman, the survivor, and Robert W. Rollman, now deceased, were brothers, dealing as equal partners in pianos and work connected with pianos, in

Baltimore City. They had no written agreement on the terms of the partnership, but there is no controversy on them. At one time, in the year 1925, each applied for and obtained a policy of insurance on his own life for $5,000, payable on death to the other, without right to change the beneficiary during his life. Later, in 1932, upon a joint application by the two partners, these policies were replaced by policies for $2,500 each on the lives of the respective partners with the other as beneficiary, and by two more of $2,500 each made payable to the wife of each partner. Two entirely new policies for $2,500 each were taken out on application of both partners in 1927, again one on the life of each partner payable to the other. Thus at the time of the death of Robert there were two policies for $2,500 each on his life payable to Frank as beneficiary, two for $2,500 each on the life of Frank payable to Robert, and two more for $2,500, one on the life of each partner payable to his wife.

It is stipulated, or stated without contradiction, that the premiums on all the policies were paid out of joint partnership funds, and the policies payable to the partners were described on the books of the business as "partnership policies." They were so described by the surviving partner in his testimony. The complainant contends, first, that the agreed purpose of the latter insurance was that on the death of a partner the proceeds then payable, together with one-half of the partnership cash, should represent his interest, and by doing so dispense with any necessity for liquidating the business, and that in furtherance of this purpose the personal representative of the decedent should assign to the survivor all the decedent's interest otherwise. An alternative contention, urged in case the agreement should not be considered proved, is that, in the ordinary division of all assets which must then be made, all the partnership policies must be included. The agreement contended for was not in writing, and testimony was offered to establish it.

An insurance agent testified that after the insurance

had been taken out he urged upon the partners the desirability of a formal insurance trust to avoid difficulties in appraising the value of the business on the death of one partner, in ordering the disposition of surplus funds over and above the value of the business, and insuring payment of any money due to a widow from a surviving partner, in other words, urged that "the thing was incomplete, that insurance had been taken out but no real disposition had been made as to that insurance." But while the defendant, Frank Rollman, was willing to go into the proposal, Robert, now deceased, answered on a few occasions "that he knew all about that, but that everything had been taken care of, and that he was not interested at all." The decedent also left with one of his sons a sealed letter, dated a year before his death, and to be opened on the death, in which, after speaking of some insurance to be paid the sons, he said, "Mother is to get $5,000 from Uncle Frank for my share of the business and it is my wish that none of you contest this as she will need it."

So much is not in dispute. Three sons of the decedent testified that the uncle, the defendant, when gathering up the policies from the firm's safe at the time of the death, said there were policies of $5,000 on both partners, and that on the death of one his widow was to receive the $5,000 plus one-half of the cash in the business, and that when on the subsequent evening the defendant was shown the letter of the decedent, he stated that it was in accordance with the partners' agreement, and just as they had planned it, and that he would pay the $5,000 to the mother with half of the business proceeds. This statement, according to the testimony, he repeated after the funeral, and did not contradict it until several days later. The uncle, as a witness, denied this testimony, and stated that when he read the letter he was silent because he was so shocked at the misstatement of his agreement with his brother that he could make no reply, and, again, that he made none because the widow was grief stricken, in bed, and he withheld his objection

in order to avoid adding to her grief. The widow testified that she was not present at the reading of the letter. Each partner had a wife and a family, the decedent having three minor children, the youngest four years old, and his estate, from which they must receive support, outside of the partnership insurance, would be much below $5,000.

There have been other facts considered as possibly casting light on the case but they need not be rehearsed here. The manner of taking out the policies, the description and treatment of them by the partners, the evident object, as the court sees it, of subserving some purposes of the business, and an unlikelihood that either partner would provide insurance on his life for the benefit of the other to the comparative neglect of his wife and family, added to a preponderance of the testimony on the fact, bring the court to the conclusion that the policies on the life of each partner payable to the other were taken out for the agreed purpose that the survivor, to liquidate the affairs of the partnership, as he was required to do, should receive and pay over the proceeds to the estate of the partner first dying, in representation of his interest other than that in the cash. To that extent the decree was correct.

It was contended below, and here on appeal, that the evidence of an agreement so to pay over the proceeds was improperly admitted because of its contradiction of the terms of the written policy. But there has been no effort to contradict those terms. The proceeds are to be paid to the surviving partner in accordance with them, and after the provisions of the policies have thus been carried out, the agreement is offered as tending to fix the use of the money received, as by a trust. The evidence was admissible for that purpose. *Clark v. Callahan,* 105 Md. 600, 66 A. 618; *Coyne v. Supreme Conclave,* 106 Md. 54, 58, 66 A. 704.

This conclusion supports the complainant's first theory, that of an agreement, and requires an allowance to her of all she claims on her primary contention. There is

no dispute on the amount of cash to be divided on that theory. The chancellor evidently based his allowances on the alternative theory of a liquidation of partnership affairs by division of all assets, without an agreement, for he included items not claimed on the theory of the agreement, that is, he included the cash surrender value of the policies on the life of the survivor, $578.24, and the proceeds of sales of pianos subsequent to the death and valuations of others not yet sold. The bill of complaint confines the claim on its first theory of the case to the proceeds of the policies on the life of the decedent, and one-half of the firm's cash, and the testimony on the agreement contended for so limits it. The extra allowances in the decree were erroneously included.

The defendant filed a petition that the widow might be made a party defendant in order that she might be decreed to pay into the partnership assets for division the $2,500 on the policy paid to her as beneficiary, the premiums on which were likewise paid out of undivided partnership funds. The answer need only be that the agreement found did not affect that insurance. And see *Noel v. Noel*, 173 Md. 152, 195 A. 315. There were no other questions argued by the appellant, and none are considered. The decree will be affirmed in part and reversed in part, and the cause remanded for the passage of a new decree eliminating from allowances to the complainant the cash surrender values of the policies on the life of the defendant, and shares in the proceeds of sale or the valuations of pianos, and, on the other hand, requiring the complainant to deliver the acquittance or assignment of interest contemplated by the agreement.

> *Decree affirmed in part and reversed in part, and cause remanded for passage of a decree in accordance with this opinion, with costs to the appellee.*