(No. 6955. July 8, 1942.)

MARY CHIARA, Administratrix of the Estate of Cesidio Fontana, Deceased, Appellant, v. MIKE AMABILE, Respondent.

[127 Pac. (2d) 795.]

Lester S. Harrison and Frank Griffin for appellant.

James A. Wayne and James W. Wayne for respondent.

HOLDEN, J.—October 23, 1937, respondent Amabile made, executed and delivered to Cesidio Fontana his promissory note for the sum of $1333.60, drawing interest at the rate of 6 per cent per annum, and falling due two years from date, and to secure the payment of the note, Amabile made, executed, acknowledged and delivered to Fontana a real estate mortgage of even date, covering lots eleven (11) and twelve (12), block 13, Sunnyside addition to Kellogg, Idaho.

April 10, 1939, Amabile conveyed, by deed, said lot eleven (11) to Fontana, the consideration for such conveyance being stated therein as "One ($1.00) dollar and other valuable consideration."

March 13, 1940 (Fontana having died, the record not disclosing just when), Mary Chiara was appointed administratrix of Fontana's estate. On or about April 10, 1940, Amabile presented to said administratrix a claim against said estate for the sum of $1500.

June 3, 1940, respondent filed a complaint in the District Court for Shoshone County, against said administratrix, in which he alleged, among other things, that Fontana had agreed to pay him "the reasonable worth and value of said lot" (referring to lot eleven) "within a reasonable time", and further, that said lot eleven was reasonably worth the

sum of $1500. Respondent further alleged the presentation of said claim to said administratrix and its rejection and attached a copy of the claim to his complaint.

July 26, 1940, the administratrix commenced suit against respondent to foreclose said mortgage. The complaint in foreclosure is in the usual form excepting that the administratrix alleged:

"That subsequent to the 23rd day of October, 1937, that is to say, on the 10th day of April, 1939, the defendant Mike Amabile granted, bargained, sold and conveyed to Cesidio Fontana, lot eleven of block 13, Sunnyside addition of Kellogg, Shoshone County, State of Idaho, which was covered by the mortgage hereinabove referred to belonging to Cesidio Fontana; that therefore, this action is not brought to foreclose upon lot eleven mentioned in said mortgage of the 23rd day of October, 1937; that this action is brought for the purpose of foreclosing the mortgage held by the estate of Cesidio Fontana, deceased, on lot twelve of block 13, Sunnyside addition of Kellogg, Shoshone county, State of Idaho, and the tenements, hereditaments and appurtenances thereunto belonging; that Cesidio Fontana fully paid the defendant, Mike Amabile, for the said lot eleven of block 13, Sunnyside addition of Kellogg, Shoshone county, State of Idaho, and that said Mike Amabile has conveyed the said lot to Cesidio Fontana for a valuable consideration, and the said Mike Amabile owes the estate nothing by reason of said lot eleven, and the estate of Cesidio Fontana owes nothing to Amabile on the purchase price of said lot eleven."

February 3, 1941, the respondent answered the complaint in foreclosure, admitted the execution and delivery of the note and mortgage, and then alleged:
"that the consideration for said deed [referring to the deed by which he conveyed lot eleven to Fontana], conveyance and lot eleven aforesaid was the sum of $700.00, which the said Cesidio Fontana there and then, on, to-wit, April 10, 1939, promised and agreed to pay to the defendant by immediately and on the same date crediting the said $700.00 upon the note and mortgage mentioned and set forth in the complaint herein [referring to the complaint in foreclosure]."

By further answer and as an affirmative defense to the complaint in foreclosure, respondent alleged:

"That on April 10th, 1939, he paid to the mortgagee

named in said mortgage, and who was also the payee in said promissory note, the said Cesidio Fontana, the sum of $700.00 by making, executing, acknowledging and delivering to the said Cesidio Fontana a warranty deed to lot 11 in block 13 of Sunnyside addition aforesaid at and for the agreed consideration of $700.00 to be applied as a credit on said note and mortgage."

The administratrix denied the agreement alleged by respondent, and, treating the said affirmative defense as a "cross-complaint and/or counterclaim," alleged:

"Further answering said cross complaint and/or counter claim, this plaintiff alleges that Cesidio Fontana, deceased, fully paid the defendant Mike Amabile for lot eleven (11), block thirteen (13), Sunnyside addition to the City of Kellogg, Shoshone County, State of Idaho, and received from the said Mike Amabile a warranty deed acknowledging full payment to him of all monies due and other considerations for the said lots as more particularly appears from the said warranty deed mentioned and described in paragraph I of the so-called affirmative defense of the defendant contained in his said answer.

"That the said deceased, Cesidio Fontana, did not agree to give to the said defendant any sum or sums of money or other valuable considerations in excess of $300.00 for the said lot eleven (11), block thirteen (13), Sunnyside addition to the City of Kellogg, County of Shoshone, State of Idaho; that the said lot eleven herein described was at the time that it was purchased from the said defendant, Mike Amabile, of a value not to exceed the sum of $300.00, and that any money the said Fontana agreed to pay to the said Amabile for the said lot has been in hand paid to the said Mike Amabile by the said Cesidio Fontana."

March 27, 1941, upon "petition of counsel for both parties" respondent's action against the administratrix and the suit of the administratrix to foreclose said mortgage were consolidated for trial. April 4, 1941, at the threshold of the trial, respondent moved to dismiss his said action against the administratrix, and there being no objection, that action was dismissed, whereupon the trial of the foreclosure suit proceeded upon the issues formed by the above quoted pleadings. The evidence adduced at the trial is substantially as follows:

Respondent Amabile testified:

"Q. Did Fontana agree to pay you anything for lot 11?

"A. Well, sure.

"Q. How much?

"A. Why, I do not remember exactly.

"Q. Well, did you agree on the amount?

"A. Well, I don't remember exactly them times.

"Q. Well, how much did you get for the deed to lot 11?

"A. Well, he asked me once and I tell him we call it square. I asked a thousand dollars. No, he says, too much. He says seven hundred dollars. I say all right.

"Q. Did he ever pay you the seven hundred dollars, or anything?

"A. No.

"Q. How was he to pay you the seven hundred?

"A. For that money I was owing him.

"Q. He was to apply it on the money that you owed him?

"A. Yes.

"Q. And unless you get a credit on this mortgage for the deed you have received no consideration, is that a fact?

"A. No.

"Q. Thus far you have not received even a dollar for the deed?

"A. No, sir. Not a dollar.

"* * *

"Q. Did you have an agreement with Fontana as to what he was to pay you for lot 11?

"A. Well, he asked me, he wants some money and I tell him I cannot pay you because I am sick and he told me in case he died he leave everything to me. He was trying to grab something himself."

On cross examination respondent testified:

"Q. Now, I will ask you, Mr. Amabile, if you did not tell Mr. Fontana in the bank you were giving him this for past favors?"

"A. Who?

"Q. Fontana.

"A. (Laughing.)

"Q. Didn't you tell him that?

"A. No. sir."

Agnes Ferraca, called by respondent, testified:

"Q. Do you remember a time when—about when it was when Fontana began to improve lot 11 in block 13, being the lot just west of Amabile's shoe making shop?

"A. Yes, sir.

"Q. About when was it?

"A. Well, I could not say exactly the month and the date but we used to ask Fontana to come in for supper a lot of times * * * * and I come out and asked him how much the shoemaker was going to charge him for the lot, and he told me seven hundred."

On cross examination she testified:

"Q. How did this conversation happen to come up about this lot?

"A. Well, he was eating * * * and he said on the shoemaker's lot. Then I asked him how much he was going to pay for the lot and he told me seven hundred, but he was supposed to give credit on that mortgage he owed.

"Q. Did you know anything about the mortgage?

"A. Before?

"Q. Yes.

"A. Yes.

"Q. How did you know anything about it?

"A. Because they were both friends of ours.

" * * * *

"Q. Have you any idea what the lot was worth?

"A. Well, to my idea it should be more than seven hundred but that is what Fontana told me, seven hundred, and that is all I know."

Joe Melich, called by respondent, testified:

"Q. Did he ever at any time tell you what he had paid or agreed to pay for it?

"A. No. He told me that he built the house and I asked him myself if he had bought it or he going to buy it. He said, "No. I buy it from Mike."

"Q. Did he say how much he paid Mike for it?

"A. No. He asked me how much it was, it was worth, and he told me, 'Well,' he says, 'Mike owes me some money

I better buy from him,' and he says, 'I can make even with him some way.'

"Q. Was the amount ever stated?

"A. Well, he told me, he says, 'Anyway the lot will cost me six or seven hundred dollars.'

"Q. Six or seven hundred?

"A. Yes.

"Q. Did he tell you about Mike owing him the money?

"A. Yes. He said that the only way I can get it is to buy a lot of him."

L. A. McDougall, called by appellant, testified:

"Q. Was there anything said about the consideration for that deed at that time?

"A. * * * in the course of the conversation between the two of them I gathered that this lot 11, or the deed for lot 11 was to be given to Fontana for and in consideration of Fontana continuing to carry the mortgage on the other lot."

May 16, 1941, Findings of Fact and Conclusions of Law were made and filed. The court, among other things, found: "that shortly prior to April 3, 1939, the defendant and Cesidio Fontana, deceased, agreed among themselves that the said defendant should convey to the said Cesidio Fontana, since deceased, by warranty deed, all of lot 11 in block 13 of Sunnyside addition to the city of Kellogg, Shoshone County, Idaho, being one of the two lots covered by the aforesaid mortgage, for the agreed consideration of $700.00, and which consideration of $700.00 it was agreed should be paid by the said Cesidio Fontana to the defendant by crediting the said sum of $700.00 upon said promissory note and mortgage as of the date of the warranty deed conveying said lot; thereafter on April 10, 1939, pursuant to said agreement, the said defendant did convey by good and sufficient warranty deed to Cesidio Fontana all of the aforesaid lot 11 in block 13 of Sunnyside addition to the City of Kellogg aforesaid * * * *"

The court further found:

"that except for the aforesaid payment of $700.00 paid in the manner above set forth, on April 10, 1939, no part of either the principal or interest on said promissory note and mortgage has been paid."

Whereupon the court entered judgment accordingly. The appeal to this court is from the judgment.

Upon the trial appellant offered to prove the reasonable value of the lot conveyed by respondent to Fontana, to which respondent objected. The court sustained respondent's objection, and appellant assigns the ruling of the court as error.

■ As hereinbefore pointed out, appellant denied the oral agreement pleaded by respondent, and, treating his affirmative defense as a "cross-complaint and/or counterclaim," alleged that Fontana "fully paid the defendant Mike Amabile for lot 11", and then further alleged that Fontana "received from the said Mike Amabile a warranty deed acknowledging full payment to him (Amabile) of all monies due and other considerations for the said lot as more particularly appears from the said warranty deed." And while appellant also pleaded "that the said lot eleven herein described was at the time that it was purchased from the said Mike Amabile, of a value not to exceed the sum of $300.00," she did not allege that Fontana agreed to pay respondent the reasonable value of the lot. Hence, the value of the lot was not in issue and the court, therefore, properly sustained the objection.

■ Appellant contends it was incumbent upon respondent to prove the alleged oral agreement by clear, cogent and convincing evidence, and that respondent failed to prove the alleged agreement by the required degree of proof. In support of that contention, appellant cites *Rice v. Rigley*, 7 Ida. 115, 61 Pac. 290, decided in 1900. That was an action to enforce the specific performance of an oral grub stake contract. It was contended by plaintiff in the trial court and on appeal that a bare preponderance of evidence was sufficient to prove the contract, and the trial court so held; on the other hand, it was insisted by the defendants that the evidence must be so clear and certain as to leave no well founded doubt in the mind of the court, and this court so held on appeal. Later, in *Morrow v. Matthew*, 10 Ida. 423, 79 Pac. 196, decided in December, 1904, also an action to enforce an oral grub stake contract, the question presented in *Rice v. Rigley*, supra, was again presented. After reviewing *Rice v. Rigley* and many other authorities, the court said:

"When the fact is established that the contract (oral)

was entered into and the terms and conditions thereof are shown, it will be enforced, whether in writing or parol. It is also true that the courts have quite generally held that in order to enforce the specific performance of a parol contract it must be clearly and satisfactorily shown to the trial court as to its execution and the terms and conditions thereof. If the contract has not been reduced to writing it must of necessity require a greater weight of evidence to establish its existence, and the terms and conditions thereof, and in those respects satisfy the mind of the court, than if the contract were in writing and produced in evidence. Where, however, the record discloses such facts that a fair and reasonable person might conclude therefrom as to the execution, terms and conditions of the contract, I do not see how an appellate court is justified in saying that it did not appear clearly and satisfactorily to the trial court. Evidence entirely clear and convincing to the trial court who saw and heard the witnesses might, when in cold type upon the record, leave doubts in the minds of the members of the appellate court, but I do not think they should reverse the judgment on such grounds. The rule is one by which the trial court primarily weighs the evidence, and unless substantially departed from by him in arriving at his decision should not become one of original application on appeal."

Thus the court adopted the rule that the contract sought to be enforced could be proved by clear and satisfactory evidence and that "the courts will not refuse to enforce a grub stake agreement simply because a complainant cannot produce that great preponderance of evidence which produces a moral certainty and precludes all reasonable doubt."

■ Furthermore, in addition to so modifying *Rice v. Rigley*, supra, this court held that the rule should be applied by the trial court, "and unless substantially departed from by him in arriving at his decision should not become one of original application on appeal."

■ And appellant contends that the evidence is insufficient to support the finding of the trial court to the effect that Fontana orally agreed to pay respondent $700.00 for the lot in question and to credit that amount on the note and mortgage. Conceding, but not deciding, that other persons might have reached a different conclusion than the lower court, nevertheless, and as we held in *Silkey v. Tiegs*, 51 Ida. 344, 5 Pac. (2d) 1049, where (as in the case at

bar) the evidence is "sufficient to sustain the trial court in his findings and judgment * * * * we will not reverse the case because a different conclusion might be inferred therefrom by other persons. (*Wooten v. Dahlquist,* 42 Ida. 121, 244 Pac. 407; *Lus v. Pecararo,* 41 Ida. 425, 238 Pac. 1021; *Wolf v. Eagleson,* 29 Ida. 177, 157 Pac. 1122.)"

We come now to the question as to whether the trial court erred in admitting the above quoted testimony of respondent and his witnesses Melich and Ferraca.

Section 16-202, I.C.A., provides:

"The following persons can not be witnesses:

"1.  * * * *

"2.  * * * *

"3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication, or agreement, not in writing, occurring before the death of such deceased person."

We construed this section in *Finlayson v. Harris,* 49 Ida. 697, 291 Pac. 1071. In that case Rose Finlayson, as administratrix of the estate of Frank F. Finlayson, deceased, sued Harris on a promissory note. He pleaded as an affirmative defense that on December 21, 1925, he delivered his check for $150.00 to Finlayson who accepted the same "in full satisfaction and discharge of the claim or demand set up in the said complaint." This court held that "That section [referring to the section above quoted] has no application to one directly defending against a claim in favor of an estate." To the same effect see *Servel v. Corbett,* 49 Ida. 536, 290 Pac. 200.

We do not deem it necessary to discuss other contentions made by appellant. It suffices to say we find upon an exhaustive examination they are not sufficiently meritorious to justify a reversal of the judgment.

The judgment, therefore, is affirmed with costs to respondent.

Givens, C. J., and Budge, Morgan, and Ailshie, J.J., concur.