Block, Exr., *v.* Mylish et al., Appellants.

Argued Jan. 11, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused April 12, 1945.

*Robert Dechert,* with him *Chester C. Hilinski* and *Barnes, Dechert, Price & Smith,* for appellants.

*Louis J. Goffman,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE JONES, March 19, 1945:

This appeal arises out of a declaratory judgment proceeding instituted to settle a controversy between sur-

viving partners and the personal representative of a deceased partner concerning the proceeds of insurance carried by the partnership on the life of the deceased partner.

In 1923, the firm of Mylish, Mann and Drucker, composed of Isaac D. Mylish, Alfred Mann and Jerome J. Drucker, took out a separate policy of insurance on the life of each of the partners in principal sums of $10,000 and, in 1930, took out three additional like policies for $50,000 each, making in all two policies for an aggregate amount of $60,000 of insurance on the life of each partner. The partnership was named beneficiary in all of the policies and, at all times, paid the premiums thereon with partnership funds, as business expenses.

The partnership endured until June 4, 1943. Throughout its existence, the three partners had equal interests in the partnership and shared equally its profits and losses. On December 29, 1941, the partners entered into a written agreement continuing the partnership until December 31, 1943, and thereafter, from year to year, until any of the partners should give specified notice in writing to the others of his intention to terminate the agreement at the end of the then current term. This agreement conferred on the surviving partners an option to purchase a deceased partner's interest in the business upon a basis and terms as provided for in the agreement to which further reference will hereinafter be made.

At the time of the execution of the above mentioned agreement, all of the insurance policies on the lives of the partners were pledged with banks as collateral security for the payment of indebtedness then owing by the partnership. This indebtedness was paid off in full on or about May 21, 1943, and the policies were then reconveyed to the partnership as the owner and beneficiary thereof.

Mann died on June 4, 1943, leaving a last will of which Gordon A. Block is executor. At the time of Mann's death, all of the life insurance policies owned by

the partnership were free and clear of any encumbrances. Following his death, the insurance companies paid the sums due under the policies on his life, in an aggregate amount of $60,077.70, by checks drawn to the order of Mylish, Mann and Drucker and Isaac D. Mylish, Jerome J. Drucker and Gordon A. Block as executor of the estate of Alfred Mann, deceased.

Mylish and Drucker duly exercised their option to purchase Mann's interest in the business pursuant to the provisions of the partnership agreement, but a dispute arose among the interested parties with respect to the extent to which the value of the business should be affected on account of the policies of insurance on Mann's life. His executor maintained that the life insurance proceeds became an asset of the partnership contemporaneously with Mann's death and should, therefore, be reflected *in toto* in a valuation of the business, while Mylish and Drucker contended that only the cash surrender value of the policies on Mann's life was a partnership asset at the date of his death and that the proceeds of the insurance were available to them under the partnership agreement for their personal use in purchasing Mann's interest in the business. The learned judge of the court below decided the controversy in favor of the deceased partner's estate and entered judgment accordingly from which the surviving partners have appealed.

The matter in dispute is to be determined in accordance with the intent and purpose of the partnership agreement. To that end, decisions in other cases are not helpful. No decision has been cited nor found which treats with circumstances similar to those here present. The two cases cited by the appellants, both from outside jurisdictions,[1] are offered for no more than to establish the proposition "that in interpreting an agreement between partners as to insurance proceeds received as a

---

[1] *Rollman v. Rollman*, 175 Md. 379, 2 A. 2d 15, and *Kavanaugh v. Johnson*, 290 Mass. 587, 195 N. E. 797.

result of a partner's death, it is the previously expressed *intention* of the partners which is all-important." With that, we fully agree, as did the learned court below, and so does the appellee.

In the one case cited by the appellee (*Germantown Trust Co., Exr., v. Risser*, 269 Pa. 286, 112 A. 443), this Court affirmed a judgment in favor of a deceased partner's estate for his share of partnership insurance on his life. But, there is an important difference between that case and the present which prevents the ruling from being presently applicable. In the *Risser* case there was no agreement among the partners specifying the use to be made of the proceeds of the insurance on the partners' lives. True enough, the surviving partner in the *Risser* case sought to prove an oral contract, said to have been entered into by the partners at the time the insurance issued and alleged to provide that the proceeds of the policy on the deceased partner's life should be an asset "of the surviving partner, to be used for a specific purpose, namely, to pay off the deceased partner's interest." But, the proofs adduced by the surviving partner were held insufficient to establish the alleged oral contract and it, therefore, dropped out of the case. The present appellants contend that the partnership agreement of December 29, 1941, gave them, with respect to the insurance on Mann's life, what the unproven oral contract in the *Risser* case was said to have provided. We are unable to see how the partnership agreement in the instant case can possibly be thought to be susceptible of any such construction.

The presently material portions of the partnership agreement are contained in paragraph 7 thereof and the three ensuing unnumbered paragraphs from which the following excerpts or summaries are taken:

In paragraph 7 it is provided that "In the event of the termination of the partnership by the death of any one of the partners, a complete inventory of the assets of the business shall be ascertained as soon after the

death of said partner as possible, * * *" by appraisers to be selected as provided in the agreement.[2]

The next succeeding paragraph provides that "From the gross assets of the business so ascertained, the liabilities shall be deducted which shall show the net worth of the business. The surviving partners shall have the right and are hereby granted the option of purchasing the deceased partner's interest in the partnership for the sum so arrived at as to his share (good-will not to be included), * * *". The same paragraph specifies the terms of payment for the deceased partner's interest, viz., $5,000 in cash at the time the surviving partners exercise their option to purchase, fifty per cent of the balance within six months of the date of death of the deceased partner, twenty-five per cent within nine months of the same date and the remaining twenty-five per cent within one year.

The next paragraph provides that "In the event that the proceeds of life insurance on the deceased partner's life shall be paid to the copartnership and is free and clear, or is partially so, then in that event the entire proceeds, or such portion thereof as is free and clear of the said life insurance, shall be turned over and paid by said partnership on account of the purchase price and applied against the above payments insofar as it can be."

Then follows a paragraph which provides that the surviving partners should give promissory notes in accordance with the terms of payment (bearing interest at four per cent per annum) for the unpaid balance of the

---

[2] The partnership agreement provides that "the action of the appraisers in arriving at the figures [in the inventory of the assets of the business] shall be binding on the partners and the estate of the deceased partner". While an appraisal was had, as contemplated by the partnership agreement, upon the exercise by Mylish and Drucker of their option to purchase Mann's interest in the business, the appraisers purposely left open for judicial determination the question involved in this case concerning the proceeds of the partnership insurance on Mann's life.

purchase price for the deceased partner's interest. The remaining portions of the partnership agreement are not material to the question here involved.

The appellants base their claim to the proceeds of the insurance on Mann's life upon the clause above quoted to the effect, in material part, that "the entire proceeds [of the insurance on the deceased partner's life], or such portion thereof as is free and clear * * * , shall be turned over and paid by said partnership on account of the purchase price" for the deceased partner's share in the business. Because of this provision, which relates to the type of payments to be made in discharge of the liability for the purchase of the deceased partner's interest rather than to the valuation of the assets of the business, the surviving partners would have the agreement interpreted so as to mean that the proceeds of the insurance on the life of a deceased partner were to be the property of the surviving partners in their individual and personal right and not the property of the partnership. Such a construction is not admissible under any fair interpretation of the written agreement.

That the insurance policies on the lives of the partners were assets of the business, and as such partnership property, is not open to reasonable dispute. That the parties themselves so considered the insurance is equally clear. The provision in paragraph 7 that "a complete inventory of the assets of the business" should be ascertained as soon as possible after the death of a partner did not contemplate the exclusion of the insurance. Likewise, in the next paragraph, which conferred on the surviving partners the option to purchase a deceased partner's interest in the business, the agreement specified as the price to be paid therefor "the sum *so* arrived at as to his share (good-will not to be included)", i. e., according to "the complete inventory of the [cashable] assets of the business". Thus, in the portions of the agreement concerned with the ascertainment of the value of the business and the basis for computing the sum to be

paid for a deceased partner's interest, there is neither
mention nor intimation that the insurance on the lives
of the partners was not to be appraised as an asset of
the business. Under the well known rule of construction
*(Expressio unius est exclusio alterius)*, any thought that
the insurance was not to be included was still further
negatived by the express and sole exclusion of good-will
from a valuation of the assets of the business. In aid of
their contention, the appellants seek to insinuate a dis-
tinction between the terms "the partnership" and "the
business" in their relation to assets. The fact is that the
parties themselves used the terms interchangeably. Their
written agreement plainly so indicates. What they en-
deavored to, and did, embrace were all of the assets of
determinable cash value standing to their credit in con-
nection with or incidental to their joint venture.

The purpose and intent of the provision respecting
the use to be made of the proceeds of the insurance is
readily apparent. Under the immediately preceding
paragraph of the agreement, the surviving partners were
required to make but a relatively small cash payment
upon exercising their option to purchase a deceased part-
ner's interest. Payment of the balance of the purchase
price was deferred and was to be made in installments
over the year succeeding the partner's death. The reason
for that provision is obvious. It was designed to save the
surviving partners from the necessity of converting part-
nership assets, to the possible impairment or disruption
of the business, in order to pay the purchase price in
cash forthwith. Immediately following the provision
about the use of the proceeds of the insurance, the agree-
ment provides that the surviving partners' deferred lia-
bility for the balance of the purchase price should be
evidenced by no more than their promissory notes. It is
in connection with those provisions (as to the deferred
payments and the notes) that the agreement requires
that "the entire proceeds [of the life insurance], or such
portion thereof as is free and clear * * * , shall be
turned over and paid by said partnership on account of

the purchase price [for the deceased partner's interest] and applied against the above [deferred] payments insofar as it can be". In short, to the extent of the insurance money received by the partnership upon the death of a partner, his representatives were to receive (on account of the purchase price for his interest in the business) cash instead of notes of the surviving partners. That is the clearly expressed meaning of the provision. It was not intended to advantage the surviving partners pecuniarily at the expense of their deceased associate.

The element of wager, based upon the fortuity of survivorship, which the appellants' construction of the agreement would introduce, could serve to deny the right of the partners to a reciprocal insurable interest in the life of each other. This is, by no means, intended to suggest that partners do not have an insurable interest in the life of one another. Undoubtedly, they have such an interest, but, as the Supreme Court of the United States said in *Connecticut Mutual Life Insurance Company v. Luchs,* 108 U. S. 498, 505, in quoting with approval from one of its earlier decisions, " * * * in all cases [involving the right to insure] there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured." Under the present appellants' contention, a partner's expectation of benefit or advantage could lie not in the continuance of the lives of his partners but rather in the possibility of their deaths prior to his own. The impeachment of the basis for the insurance which the appellants' construction would thus inject would require that the contention be discountenanced. In interpreting a contract, a construction which would effect an unreasonable or unlawful end is to be avoided. See Williston on Contracts, Vol. 3 (Rev. Ed.), § 620, p. 1785 et seq.; Restatement, Contracts, Vol. 1, § 236, p. 327.

The unreasonableness of the appellants' contention is further apparent. The construction of the partnership

agreement, which they advocate, would not furnish a rule uniformly applicable. For example, had the surviving partners declined to exercise their option to purchase Mann's interest, then, under further terms of the partnership agreement, liquidation would have ensued. In that event, the value of the deceased partner's interest would have been fixed as of the date of the dissolution of the partnership. *Wood v. Wood,* 312 Pa. 374, 378, 167 A. 600; *Froess v. Froess,* 284 Pa. 369, 374, 131 A. 276. Mann's death worked a dissolution of the partnership. Act of March 26, 1915, P. L. 18, Part VI, § 31, 59 P.S. § 93. And, at the instant of dissolution, the cash proceeds of the matured policies on Mann's life forthwith became part of the partnership assets. The fact that the policies were not paid by the insurance companies for several weeks thereafter, pending the filing of required proofs, did not constitute the insurance a subsequently accruing asset. Again, had the partnership's loans at bank still subsisted at the time the insurance on Mann's life accrued as a liability of the insurers and had the banks received and applied the insurance in discharge of the partnership's indebtedness to them, as they would have had a right to do, the proceeds of the insurance, so used, would have been automatically reflected in the net worth of the assets of the business to the extent of the corresponding decrease in the amount of the deductible liabilities. In neither of the contingencies just mentioned would the appellants' contention have been applicable. It is limited to the one situation where the surviving partners exercise their option to purchase.

Furthermore, there was no basis for including in the assets of the business merely the cash surrender value of the policies on Mann's life. Yet, that is the sole alternative proffered by the appellants. Their position would have been more consistent had they contended that, upon their exercise of the option to purchase Mann's interest (the proceeds of the insurance on his life being free from encumbrance), nothing on account of the insurance was to be included in the assets of the business. It is anach-

ronous to treat with *cash surrender* value in respect of policies which, at once, have become liabilities of the insurer for the net proceeds of the *face* value of the insurance. The fact is that the partnership policies on the lives of all of the partners had asset value—cash surrender while they lived—face value (less any encumbrances) as to any of them who died. Consequently, at the instant of Mann's death, the life insurance assets on the books of the partnership would properly show the net proceeds payable on the matured policies on Mann's life and the cash surrender value of the policies on Mylish and Drucker.

The judgment is affirmed; costs to be paid by appellants.