**WYNNE et al. v. BOONE et al.**
**BOONE v. BOONE et al.**

Nos. 10429, 10430.

United States Court of Appeals
District of Columbia Circuit.

Argued April 20, 1950.

Decided April 26, 1951.

See also, 7 F.R.D. 22.

Richard L. Merrick, Washington, D. C., for appellants in No. 10429.

Frederick Bernays Wiener, Washington, D. C., for appellant in No. 10430.

Louis M. Denit, Washington, D. C., with whom Thomas S. Jackson, A. Leckie Cox and P. Baxter Davis, Washington, D. C., were on the brief, for appellees.

Before EDGERTON, CLARK and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This action was brought by appellees in October 1946 to set aside, as in fraud of creditors, a conveyance of realty on 16th Street, in Washington, D. C., from Daniel F. Boone to Jessie V. Wynne (wife of George C. Wynne), executed on October 27, 1942, as well as a deed of trust on the same property, executed on June 29, 1942, securing George C. Wynne in the sum of $2,500 and naming Mrs. Wynne and her brother-in-law as trustees.

The appellees had previously instituted two actions against Boone in North Carolina, for an accounting of his administration as executor and trustee of two estates, and of a trust fund for his minor daughter. One action was commenced on June 21, 1941, and a North Carolina judgment in favor of plaintiffs on that action was recovered on May 26, 1942.[1] The other action was commenced on the 29th of October, 1940, and a judgment was recovered in North Carolina on October 12, 1942.[2] Two separate actions were commenced in the District Court for the District of Columbia to reduce these North Carolina judgments to local judgments. The District of Columbia judgments were secured on December 18, 1945,[3] and on March 14, 1946. The amount of the indebtedness due under these District of Columbia judgments is over $15,000 (Jt.App. 21, 45–48, 173–75).

The present action was brought under section 12–401 of the District of Columbia Code, which provides: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands or rents and profits issuing from the same, or in goods or things in action, and every charge upon the same, and every bond or other evidence of debt given, or judgment or decree suffered, with the intent to hinder, delay, or defraud creditors or other persons having just claims or demands of their lawful suits, damages, or demands, shall be void as against the persons so hindered, delayed, or defrauded: *Provided,* That nothing herein shall be construed to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor: *Provided further,* That the question of fraudulent intent shall be deemed a question of fact and not of law. (Mar. 3, 1901, 31 Stat. 1368, ch. 854, § 1120.)"

From a judgment of the District Court setting aside the deed of trust and the absolute conveyance, the grantor and the grantees bring these appeals.

## I.

Appellants' first contention is that the evidence adduced at the trial was not sufficient to justify the judge (Letts, J., who sat without a jury), in reaching his findings.[4]

We have studied the record before us with considerable care. The evidence presents difficult issues. But we must make it

1. Affirmed Boone v. Lightner, 1943, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587.

2. Modified January 27, 1943 (Jt.App. 172–76).

3. Affirmed Boone v. Boone, 82 U.S.App. D.C. 38, 160 F.2d 13, certiorari denied 332 U.S. 766, 68 S.Ct. 73, 92 L.Ed. 351.

4. At the conclusion of the trial the judge stated that "The Plaintiff has abundantly carried the burden of proof." (Jt.App. 144) He entered findings of fact adverse to the defendants, including the following:
"7. There was no consideration for the purported deed of trust dated the 29th day of June, 1942, or the note executed in connection therewith. The defendant, Boone, was not then indebted to the defendant, George C. Wynne, in the sum of Two thousand five hundred dollars ($2,500.) or any other sum, and said deed of trust was executed and recorded with the intent to hinder, delay or defraud the plaintiffs in the enforcement of their just claims and demands against said defendant Boone.
"8. The defendant, Jessie V. Wynne, did not give any consideration for the said deed of conveyance to her on the 27th day of October, 1942. At the date of said conveyance, the defendant Boone was not indebted to either the defendant, George C. Wynne, or the defendant, Jessie V. Wynne, and said deed was not given in consideration of the satisfaction

clear that we are not called upon to decide whether or not we would as an original matter enter findings identical with those of the trial judge. It is not our function to weigh the evidence and determine which construction of it appears most logical to us. Our task as an appellate court is defined for us, and our powers delimited, by rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that findings of fact made by the trial judge "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In this case, in contrast with such cases as Dollar v. Land, 87 U.S.App.D.C. 214, 184 F.2d 245, the evidence was not primarily documentary. Oral testimony, dependent upon the "candor and credibility of the witnesses", United States v. U. S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, was the crux of the case. The trial judge saw and heard the witnesses; we have done neither. Under Rule 52, we must give due weight to the opportunity which he thus possessed. We must recognize that the trial judge may disregard the testimony of a particular witness "even in the absence of any direct conflicting testimony. He [the witness] may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too,

of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced." Quock Ting v. United States, 140 U.S. 417, 420–421, 11 S.Ct. 733, 734, 35 L. Ed. 501.[5]

This court has said that "fraud must be shown by clear and convincing evidence— * * * evidence which is not equivocal, that is, equally consistent with either honesty or deceit * * *." Public Motor Service v. Standard Oil Co. of New Jersey, 69 App.D.C. 89, 91, 99 F.2d 124, 126. But we have also recognized that circumstantial evidence is sufficient to prove fraud. De Walt v. Doran, 21 D.C. 163, 179–180; Callan v. Statham, 23 How. 477, 64 U.S. 477, 16 L.Ed. 532. Those who are alleged to have committed a fraud are unlikely to confess wrongdoing, and the sole source for inference of either honesty or deceit may be the circumstances of the transaction.

Our duty under the mandate of Rule 52(a) is to uphold the trial judge's findings of fact "unless clearly erroneous". That duty cannot be supplanted by the application of a rule requiring fraud to be shown by clear and convincing evidence, sound though such a rule is as a guide to the trial court or jury in deciding particular issues.[6] We repeat that it is not our function to weigh the evidence. It is not

---

of any indebtedness on the part of said Boone to either said George C. Wynne or Jessie V. Wynne, but was executed and recorded with the intent to hinder, delay or defraud the plaintiffs in having satisfaction of their just claims and demands against said defendant, Daniel F. Boone.

"9. The defendants, George C. Wynne and Jessie V. Wynne, had knowledge of the intent and purpose of said defendant, Daniel F. Boone, to hinder, delay or defraud creditors in executing and recording said deed of trust mentioned in Finding No. 5, and said deed mentioned in Finding No. 6.

5. In Taylor v. Bunnell, 1933, 133 Cal.App. 177, 23 P.2d 1062, the California court

said: "* * * the court was not bound to accept the statements of the witness * * * as true, even admitting no witness contradicted him. * * * a trial court is not bound to decide in conformity with the declaration of any number of witnesses who do not produce conviction in its mind, or against a presumption or other evidence satisfying its mind." 23 P.2d at page 1064.

6. In a similar connection, the Supreme Court of Minnesota has said: "The rule is at least a warning to the trier of fact, judge, or jury that the issue upon which a finding is sought is such that care should be exercised * * *." Hartigan v. Norwich Union Indemnity Co., 1933, 188 Minn. 48, 246 N.W. 477, 478.

necessary that we ourselves find the evidence on the issue of fraud to be clear and convincing.[7] Our sole function is to decide whether or not the trial judge was clearly in error in being convinced by the evidence presented. United States v. U. S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

We have reviewed the record in the light of these standards. We note that Wynne and Boone testified, among other things, that they had long been intimate friends (Jt.App. 83, 102); that loans totaling $2,500 had been made by Wynne to Boone, prior to the execution of the deed of trust (Jt.App. 50–53, 55–56, 84–89); that the latter instrument was given to secure these loans (Jt.App. 56, 88–89); that the $2,500 was due in installments of $25.00 a month, commencing in July 1942 (Jt.App. 63); and that the absolute conveyance was made to Mrs. Wynne in payment of the debt, in accordance with Colonel Wynne's request, made prior to his departure for service overseas and for the purpose of protecting Mrs. Wynne (Jt.App. 63–64, 93–94). It also appears that two releases of the deed of trust were signed by the trustees, one on July 21, 1942 (Jt.App. 64–66, 149), and another on October 18, 1942; that the deed of trust and the absolute conveyance were both promptly recorded (Jt.App. 147–49), but the releases of the deed of trust were never placed on record (Jt.App. 128–29, 149); that Boone continued to live in the premises with his household until 1948 (Jt. App. 34), paying the expenses of maintenance (Jt.App. 59, 95–97); and that during that time he was active in efforts to sell the property in the open market. (Jt. App. 34, 35, 122.) Explanations not without plausibility were offered by Wynne and Boone for the latter circumstances. (Jt. App. 35–38, 99.)

We also note that certain circumstances were left wholly or partly unexplained. For example, it was testified that the amounts allegedly loaned were transferred in cash from hand to hand (Jt.App. 52, 75–76, 85, 154A–3, Wynne's Exhibit No. 5),

although the sums were large and the purpose of the alleged loans was said to be to finance litigation in which Boone was involved. (Jt.App. 84, 104, 113.) While checks were drawn on Wynne's bank account for these amounts, they were not deposited in Boone's account, though he had one. (Jt.App. 75.) Instead these checks were cashed by Wynne and Boone at the paying teller's window of Wynne's bank. (Jt.App. 52, 75–76, 85, 154A–3, Wynne's Exhibit No. 5.) Further, within two days after one of the alleged loans, that of June 29, 1942, for $1,500, Wynne deposited $1,500 in cash in his account (Jt. App. 150A–4, 107–09). Wynne explained that he received this sum from the sale of household effects prior to his departure for overseas. (Jt.App. 109–10, 132–34.) This was corroborated in small part by other testimony. (Jt.App. 134–35, 37–39.) Wynne's description of the transactions, however, was vague, and the records introduced were scanty and self-serving. (Jt. App. 109–10, 132–34.) The trial judge need not have found the explanation offered a convincing one. The same may be said of the testimony regarding Boone's ownership of cars in 1941–1942; testimony which even if believed by the trier of facts was susceptible to the interpretation that Boone was concealing the ownership of the cars and Wynne was aware of it. (Jt. App. 50, 69–76, 79–80, 113–14, 117, 125–28, 154A–8, 154A–9, 154A–10.)

In short, after carefully reviewing the entire evidence before us, circumstantial though that evidence may be on the issue of fraud, we are not left with the firm and definite conviction of error of which the Supreme Court speaks in the Gypsum case. We must therefore sustain the findings of the trial judge.

## II.

Appellants also attack the standing of appellees to bring this suit. The appellant-grantor Boone argues that there is nothing in the record to indicate that he was insolvent at the time the conveyances

7. Taylor v. Bunnell, supra; Chiara v. Amabile, 64 Idaho 55, 127 P.2d 795, 798–99; Nichols v. Mitchell, Cal.App., 189 P.2d 734, subsequent op. 32 Cal.2d 598, 197 P.2d 550; Stromerson v. Averill, 22 Cal.2d 808, 141 P.2d 732.

were made, or that execution was ever issued on the District of Columbia judgments, or that execution if issued was returned *nulla bona*. The grantor further argues that appellees were not judgment creditors in the District of Columbia until judgments were secured here on December 18, 1945, and March 14, 1946; the North Carolina judgments on which these were based were obtained on May 26, 1942, and October 12, 1942, respectively. He therefore contends that appellees had not finally or sufficiently established that they were creditors of Boone when the conveyances were made in June and October of 1942. The grantees, Mr. and Mrs. Wynne, make similar contentions. They add that if it is assumed that the plaintiffs were creditors of Boone, the most that can be said is that he preferred one creditor over another.

Whatever may have been the requirement previously,[8] Rule 18(b) of the Federal Rules of Civil Procedure now makes it clear that a suit to set aside a fraudulent conveyance may be maintained in the Federal courts "without first having obtained a judgment establishing the claim for money." As the note of the Advisory Committee on Rules points out: "In respect to fraudulent conveyances the rule changes the former rule requiring a prior judgment against the owner, Braun v. American Laundry Mach. Co., D.C.N.Y.1932, 56 F. 2d 197, to conform to the provisions of the Uniform Fraudulent Conveyance Act, §§ 9 and 10."

Rule 18(b) establishes for the Federal courts a position which had been steadily gaining acceptance in the several states, through legislation and decision.[9] For, in the words of Glenn, "there is immorality in the old rule that required the creditor to have judgment as a prerequisite to setting aside a fraudulent conveyance." 1 Glenn, Fraudulent Conveyances 142. Rule 18(b) is a substantial step toward the removal of obsolete and unnecessary impediments to the early and complete settlement of disputes. See Armour & Co. of Delaware v. B. F. Bailey, Inc., 5 Cir., 132 F.2d 386, 387; Dubia v. Ebeling, D.C., 30 F.Supp. 992; cf. United States v. Star Const. Co., D.C., 77 F.Supp. 758, 766; Utesch v. United States Fidelity & Guaranty Co., D.C., 27 F.Supp. 933; but cf. Iroquois Oil & Gas Co. v. Hollingsworth, D.C., 1 F.R.D. 201. See, also, 3 Moore, Federal Practice 1825–1835 (2d ed. 1948).

The Rule in abolishing any requirement of first securing judgment, necessarily strikes down any remaining vestige in the Federal courts of the old view that a creditor before bringing a suit to set aside a fraudulent conveyance should not only hold a judgment but should also issue execution on it and wait until the writ had been returned unsatisfied. It would appear obvious that a creditor who has reduced his claim to judgment should not be placed in a worse position or subjected to more onerous requirements than a creditor who has not obtained a judgment.[10] And in this

---

8. E. g., Hannan v. Hardee, 63 App.D.C. 76, 69 F.2d 394.

9. Chief Judge Cardozo, in American Surety Co. v. Conner, 251 N.Y. 1, 166 N.E. 783, 785, 65 A.L.R. 244, discussing the New York legislation, said: "We think the effect of these provisions is to abrogate the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against a fraudulent conveyance. The Uniform Act has been so read in other states. Gross v. Pennsylvania Mortgage & Loan Co., 101 N.J.Eq. 51, 137 A. 89; United Stores Realty Corp. v. Asea [102 N.J.Eq. 600], (N.J.Err. & App.) 142 A. 38; Morse v. Roach, 229 Mich. 538, 201 N.W. 471; Lipskey v. Voloshen, 155 Md. 139, 141 A. 402. * * * The creditor may reject the

aid of equity, and levy attachment or execution at law (section 278, subd. b), as he might before the statute. He may seek the aid of equity, and without attachment or execution, may establish his debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit." See also Harper v. Atlanta Milling Co., 203 Ga. 608, 48 S.E.2d 89; Hays v. McCarty, 239 Ala. 400, 195 So. 241, 244; cf. Babcock v. Tam, 9 Cir., 156 F.2d 116, 121; Valley Bank v. Malcolm, 23 Ariz. 395, 204 P. 207, 214.

10. This is the construction given in New York to comparable statutory provisions. Bernheim v. Burden, 253 App.Div. 232, 1 N.Y.S.2d 689; see, also, quotation given in preceding note.

jurisdiction, in any event, but little remained of the antique attitude on the subject. In 1917, Mr. Justice Robb pointed out that in the District of Columbia our Code had "put an end to the distinction between legal and equitable titles and subjected the interest of the judgment debtor, whether legal or equitable, to the satisfaction of the judgment." Accordingly, it was held unnecessary for a judgment creditor to allege the issuance of an execution at law, prior to bringing a bill in equity to subject equitable interests in land to the satisfaction of his judgment. Biggs v. Campbell, 46 App.D.C. 288, 291. In 1935, that decision was cited with approval in a case which held that property of a debtor transferred in fraud of creditors "still remains the debtor's property, and the lien of a subsequent judgment is as effective, in time, against the fraudulent grantee as against the judgment debtor." Reilly v. Sabin, 65 App.D.C. 125, 81 F.2d 259, 261, per Judge Groner.

The grantor-debtor, in a case of this kind, is in no moral or equitable position to resist the action by contending that the plaintiff should first have exhausted other remedies against him. To insist on that would commonly be to insist on the carrying out of a fruitless and idle gesture. See Empire Lighting Fixture Co. v. Practical Lighting Fixture Co., 2 Cir., 20 F.2d 295, 297, per Judge Learned Hand. If the debtor in good faith wishes to satisfy the debt or judgment from assets not involved in the conveyance, he is no doubt free to do so, and the creditor on receipt of payment will lose any standing to prosecute the suit to set aside the conveyance. See 1 Glenn, op. cit. supra, 221, 459–60. But that is not the situation here.

Appellants contend that the creditors have no right to set aside the conveyance unless they show that Boone was insolvent. They argue that the creditors could not have been hindered, delayed or defrauded by the conveyance unless there was no other property readily available to satisfy their judgments. Were the fraud involved here presumed as a matter of law, there would be considerable substance to appellants' argument. But in the District of Columbia fraud is a matter of fact. We think that once a creditor has established, as was done here, that a conveyance was made and recorded with an intent to hinder, delay or defraud, it would be unjust to require him to carry the onus of proof as to the financial status of his debtor. Such information is not easily ascertainable by the creditor. At the same time, it is within the hands of the debtor. When the purpose of the transaction is to hinder, delay, or defraud, it does not lie in the mouths of those participating in that transaction to say that they were unsuccessful in their purpose. Rather, if they wish to avoid the effect of their fraud, they must come forward and make available other property to satisfy the judgments. Cf. Empire Lighting Fixture Co. v. Practical Lighting Fixture Co., supra, 20 F.2d at page 297; Glenn, op. cit. supra, at pp. 459–60. A similar conclusion apparently was reached by the draftsmen of the Uniform Fraudulent Conveyance Act. For section 4 of that Act provides that, without regard to actual intent, a conveyance made without fair consideration and rendering the conveyor insolvent is fraudulent as to creditors; section 7, on the other hand, provides that a conveyance made with actual intent to defraud is fraudulent as to creditors and makes no mention of insolvency. And in interpreting analogous statutes it has been held that, where actual intent has not been shown, in order for a creditor to prevail, insolvency must be established. Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 2 Cir., 109 F.2d 924, 926–27. Contrariwise, where there is fraud in fact, as distinguished from fraud presumed in law, insolvency is not a material consideration. Keeter v. Bank of Ellijay, 190 Ga. 525, 9 S.E.2d 761; T. G. W. Realties v. Long Island Bird Store, 151 Misc. 918, 272 N.Y.S. 602.[11]

11. Cf. Kemp v. Lynch, 8 Cal.2d 457, 65 P.2d 1316, 1318, certiorari denied 302 U.S. 685, 58 S.Ct. 34, 82 L.Ed. 529; Adams v. Bell, 5 Cal.2d 697, 56 P.2d 208;

■ It may be that a grantee should sometimes be placed in a different legal and moral position from the grantor. An innocent grantee or donee might in some circumstances be entitled to contend that the judgment creditor should be required to exhaust the grantor's other assets before seeking to attack the grant or gift. But where, as here, the grantee has been found to be in the same position as the grantor, so far as knowledge and intent are concerned, there can be little reason for permitting the grantee to raise a defense which would not be available to the grantor. Where the conveyance is found to have been fraudulent neither one can claim to have been injured by the creditor's pursuit of one remedy rather than another. See Branham v. Johnson, 66. App.D.C. 230, 85 F.2d 807; 1 Glenn, op. cit. supra, 148.

The judgment of the District Court is Affirmed.

CLARK, Circuit Judge (dissenting).

It seeems to me that both the trial judge and my distinguished colleagues of the majority are laboring under a delusion. In their opinion, all that is necessary for the plaintiff to establish in his case of conspiracy to defraud creditors is merely to allege such a conspiracy in his complaint, and then sit back complacently in the belief that the mere allegation without proof shifts the burden to the defendant and imposes on him the duty to prove his innocence. Such, in my opinion, is not the law, and it has never been the law.

I agree with that large part of the court's opinion which is devoted to the great weight to be accorded to the findings of the trial judge, who tried the case without a jury. No citation of authorities is necessary to prove this point which is universally recognized. That is particularly true in this case, because I entertain the highest respect for the learning and probity of the trial judge whose friendship I have enjoyed for many years. But this rule completely fails where, as in this case, there is no evidence whatever to sustain his decision.

Here the plaintiff produced nothing whatever in the way of proof except to pile inference on inference and surmise upon surmise in support of the allegation of one of the most serious charges known to the law—conspiracy to defraud. There is not a particle of evidence in the record to indicate even remotely that Colonel Wynne knew of the so-called judgments in North Carolina at the time of the conveyance. He did know, as did everyone who read the newspapers, that Boone was engaged in a bitter fight with his former wife over the custody of their children. As to Boone there is not one scintilla of evidence to show that he had any purpose to defraud anybody. He desperately needed funds to carry out his defense against the efforts to wrench the custody of his weeping and reluctant children from him and to return them to the custody of his former wife who had previously been adjudged to be of such dissolute and abandoned character as to be unfit to have their custody. Boone appealed to Wynne who befriended him by loaning him money. Shortly thereafter Wynne was ordered overseas and, his wife not being familiar with business, he had a perfectly natural desire to put his affairs in shape before his departure, as many another soldier has done. He suggested to Boone that, since the latter could not repay his debt, he should convey the title to the property in question to Mrs. Wynne. Boone acquiesced which was the only thing an honest man could have done.

In order to maintain this action the law required that it be upon clear and convincing proof. In this case there has been no proof at all.

Most of the opinion of the Court is

First National Bank of Petersburg, Ill. v. Shipley, 109 Cal.App. 194, 292 P. 996; Greene v. Wilson, 90 Colo. 562, 11 P.2d 225; Campbell v. First National Bank

of Barbourville, 234 Ky. 697, 27 S.W.2d 975; Rine v. Compton, 115 W.Va. 379, 176 S.E. 429, 432.

taken up with matters wholly outside the record. Consequently, it seems not amiss to say that, from the time Boone's children were given over to his former wife on the pretense that she had completely changed her dissolute and disgraceful character by teaching a Sunday School class, down to the present case, Colonel Boone has received exceedingly scaly treatment from the courts of the District of Columbia.