[Civ. No. 4874. Third Appellate District.—July 5, 1933.]

ALMA TAYLOR et al., Respondents, v. EDWIN BUNNELL, Appellant.

Shelton, Gray & McWilliams, Robert L. McWilliams, Stephen W. Downey and George R. Freeman for Appellant.

Casper A. Ornbaum, Everett H. Roan and W. T. Belieu for Respondents.

PULLEN, P. J.—This case has been reviewed once by the District Court of Appeal (77 Cal. App. 525 [247 Pac. 240, 244]) and once by the Supreme Court (211 Cal. 606 [296 Pac. 288]), the law has been established, and the facts pre-

sented during the present trial being substantially the same as were adduced at the prior hearings, need not be again set forth in detail. Briefly, however, this is an appeal by the defendant from a judgment rendered in an action seeking to have a constructive trust impressed upon certain real property.

There is no dispute as to the fact that appellant Edwin Bunnell and Margaret Peterson were married and were husband and wife at the death of Mrs. Bunnell in May, 1921; that there were no children of this marriage, and the real property in question consisted of ranch property in Glenn County, which was the separate property of the wife. About a month prior to her death, Mrs. Bunnell, who was then very ill and had been suffering for some time with an incurable malady, executed and acknowledged a deed to Dr. Bunnell, appellant herein, in consideration of love and affection. At the same time Dr. Bunnell made, signed and acknowledged a deed for the same land from himself as grantor to Alma Taylor, the plaintiff and respondent herein. Apparently no secret was made of the existence of these deeds and after the death of Mrs. Bunnell, plaintiff asked appellant about the deeds, and getting no information from him, brought this action to have it decreed that appellant held title to the property in trust for her subject to a life estate in him.

The trial court, sitting without a jury, held with the plaintiff that she was the owner of the real property subject to a life estate in defendant.

The principal ground here urged by appellant for reversal is that the evidence does not sustain the decree of the trial court giving him a life estate only in the real property in question impressed with a trust in favor of plaintiff for the remainder.

This contention by defendant is based partially upon an alleged lack of evidence of any legally binding promise, essential before a constructive trust can be found by the court, and also that the testimony established at most, an incipient interest in plaintiff, which defendant might voluntarily have recognized, and which in the event of his breach of promise would only then give rise to a constructive trust. The Supreme Court in this case, upon the former hearing (211 Cal. 606 [296 Pac. 288, 291]), said, however:

"The rule is also well established that to prove a trust by parol under a conveyance absolute in its terms, the evidence must be clear, satisfactory and convincing (citing cases), and whether the evidence in any case is of this character must be determined by the trial court."

And also in the same case said: "It must not be assumed that on the former appeal it was decided that upon a mere showing of a confidential relationship between the grantor and the grantee, a *prima facie* constructive trust was created and imposed on the grantee. . . . After the showing of the confidential relationship the burden was still upon the plaintiff to prove that the deed was not what it purported on its face to be; in other words, to prove that the transaction did not create a fee-simple interest in the defendant, but that the execution and delivery of the deed to him under all the facts and circumstances surrounding or pertinent to the transaction constituted the defendant a constructive trustee entitled to a life estate with the remainder in fee held for the benefit of the plaintiff. (*O'Brien* v. *O'Brien*, 21 Cal. App. 620, 623, 624 [132 Pac. 612].)"

The trial court found the existence of a constructive trust, and because of appellant's contention that the evidence does not justify such a conclusion, we must examine that evidence to discover if substantial evidence may be found in the record or any inference reasonably be inferred therefrom that will support such finding. It is not sufficient that this court, if sitting as a court of first instance, might have reached a different conclusion, but appellant must show that a reasonable man could not reasonably have reached the given conclusion from the evidence presented. (*Bedford* v. *Pacific Structural Welding Corp.*, 121 Cal. App. 162 [8 Pac. (2d) 558].)

The contention of appellant that the deceased trustor had the power to revoke the trust once established merely by an oral direction to the trustee, does not seem to be the rule. (Sec. 2280, Civ. Code.)

This court at the former hearing said:

"Prior to the time those declarations were made Mrs. Bunnell had conveyed the land to defendant either absolutely or impressed with a trust in favor of plaintiff. In either case she parted with all her pecuniary interest in the property upon the delivery of the deed to defendant. . . .

Plaintiff is not claiming as successor to any interest remaining in Mrs. Bunnell after the execution of the deed to defendant, but she claims an interest conveyed by that deed. Her interest in the land if any, and that of the defendant, were created by the same instrument. . . . ''

Concurrently with the passing of title to the trustee the beneficiary becomes vested with the equitable ownership of or beneficial interest in the property and unless the right to change is reserved by the grantor the beneficiary has an irrevocable right therein. The trial court held, and the evidence supports the finding, that Mrs. Bunnell conveyed the property to defendant upon his parol promise that he would hold it for the benefit of plaintiff, and immediately a trust arose.

Briefly, the testimony in support of the creation of the trust is given by certain witnesses who were personally acquainted with both Mrs. Bunnell and her husband and were frequently in the company of Mrs. Bunnell, both before and after the execution of the instrument in question.

One of the witnesses testified in regard to a conversation had with Mrs. Bunnell and Dr. Bunnell concerning the execution of the deed, as follows: "Q. During her last illness, did she talk with you at any time about any desire on her part to dispose of her ranch in the case of her death? A. She often talked about her ranch, that she did not want it to go to the doctor's daughters. . . . Q. Just tell us what the doctor said to you about that. A. He told me that last night—this was the day after—she had called him into her room and told him that she wanted to fix up her affairs. He said, 'Tell me what you want to do, and I will tell you how to do it.' She said, 'I want to leave you my ranch for your lifetime, but in case of your death, I want it to go to Alma.' So he said, 'I told her what to do, to make out a deed to me, and that I would make out a deed to Alma leaving the ranch to Alma, and in case of her death, would immediately turn over the deed to Alma. She also wanted me to pay her mother $50.00 a month for life, and I told her I would do that; and explained that if she left the property in trust, that would make it difficult for me to pay this money to her mother because the trust would interfere; so she seemed perfectly satisfied with this, and it was all fixed up. I got Samuels up there and we signed the deeds.' ''

The defendant denied having made the foregoing statement, but admitted, referring to the land, on the day after the execution of the deeds he said to a witness, "She has deeded it to me and I have deeded it to Alma to take effect at my death."

Defendant testified further in regard to the making and destroying of the deed as follows: "Q. Was your wife dangerously ill at the time these deeds were made? A. She was. Q. Then why didn't you tell Alma about the deeds? A. It was none of her business, and the way she attacked me, nobody would tell her anything." Witness continuing: "Q. Now, when you said to your wife, 'I will make it to Alma,' why did you say 'I will make it to Alma?' A. To get rid of the conversation, and have the conversation over with, and to stop talking about death before my sick wife. Q. Didn't you say to your wife, 'Alma is the best one of the bunch, anyway, and I will make it to her?' A. I did. . . . Q. And you did it because of the fact that you felt it ought to be in the hands of somebody who would hold the land and consecrate it to her memory, didn't you? A. Yes. Q. Now, with that interview in your mind, why didn't you tell Alma Taylor within the next two or three days or in the next week or so, when she came there, what you had done? A. I was instructed not to; and instructed to destroy the deed. Q. Didn't you see Alma Taylor there that very day or the next day afterwards? A. Yes, I presume I did. Q. Did you ever tell Alma Taylor you had destroyed that deed? A. No, sir. Q. Did you ever tell anybody you had destroyed that deed? A. No, sir." The same witness proceeding: "Q. Why didn't you tell them—after you had already told them that Marge had made a deed to you and you had deeded it on to Alma to take effect after your death—why didn't you tell them that your plan had changed? A. Because they didn't ask me, and it didn't enter my head to tell them, and why should I tell them?" Further, the witness said: "Q. Well, when you made this deed of April 26, 1921, to Alma Taylor, when did you intend to give that deed to Alma Taylor? A. Never. Q. When did you intend to tell Alma Taylor that you had made that deed at that time? A. Never. Q. When did you intend to tell Alma Taylor that you were making that deed, or had made a deed to

her, and that she should hold that land in consecration to your wife? A. Never. I expected her to find it in my safety deposit box at my death.''

Appellant conceding for the sake of argument that the testimony offered by plaintiff is sufficient to impress the property with a trust, contends that the obligation originally imposed upon Dr. Bunnell to make the conveyance was subsequently withdrawn by Mrs. Bunnell, but, as already pointed out, the trust having once been created could not be terminated in the manner suggested. ▉ Furthermore, the court was not bound to accept the statements of the witness as to the revocation as true, even admitting no witness contradicted him. Although a witness is presumed to speak the truth, a trial court is not bound to decide in conformity with the declaration of any number of witnesses who do not produce conviction in its mind, or against a presumption or other evidence satisfying its mind. (*Morris* v. *Morris,* 85 Cal. App. 599 [258 Pac. 616].)

''It is a wild conceit that any court of justice is bound by the mere swearing; it is swearing credibly that is to conclude its judgment.'' (*Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513, 515].)

A careful reading of the record convinces us that the conveyance in question was made to the appellant in reliance upon his promise to convey the remainder to respondent, and except for that promise, deceased would not have executed the conveyance.

Support for that conclusion is found in the testimony of the witnesses relative to the refusal of Mrs. Bunnell to follow the form of will submitted by Dr. Bunnell making him sole beneficiary.

▉ Appellant claims that the language of Mrs. Bunnell as to the deed was precatory only, but a reading of the entire record fully supports the finding that the language conveyed a direction and command rather than a mere request or suggestion.

We find no error in the conclusions reached by the learned trial court, and the judgment is affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 1, 1933.