[Civ. No. 37146. First Dist., Div. One. June 22, 1976.]

HARRIETTE ANDREADIS, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVER-
SITY AND COLLEGES et al., Defendants and Respondents.

**COUNSEL**

Greene, Kelley & Halloran, Greene, Kelley, Halloran & Tobriner and John P. Kelley for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Robert L. Leberman, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—The issue of this appeal is correctly stated in plaintiff and appellant Harriette Andreadis' brief as: "[Whether] the trial court erred in finding that the *layoff* provisions of title V, article 7 of the

California Administrative Code [relating to faculty members of state universities and colleges] do not apply to *non-retention* decisions of probationary faculty who are non-retained because of overstaffing or decline in enrollment." (Italics ours.)

Plaintiff was appointed to a one-year probationary faculty position at California State University, Hayward, as an assistant professor in the English department. She was, and is, "a specialist in Renaissance literature and bibliography." She was reappointed for a second year on a continued probationary basis. But student interest and enrollment in the courses of her specialty were declining; the English department "had to cut a number of Renaissance courses from the Fall and Winter schedules and to offer Bibliography and Methods only once during the regular year."

The problem continued, and the department chairman reported to the university's authorities: "The decline in student enrollment in both our under-graduate and graduate programs has continued, and at a greater rate than even the most pessimistic among us ventured to predict. Even after the resignation of two regular members and the decision not to retain two others, the Department, according to University staffing criteria, is over-staffed by 2.5 positions. Professor Andreadis is, unfortunately, not a specialist in language and linguistics, an area in which—as the result of the loss of two department members—we are understaffed, but a specialist in bibliography and Renaissance literature, an area in which we have three senior and two junior faculty members. The unhappy situation is this: given declining enrollments we are over-staffed in her area and seriously under-staffed in another. I therefore recommend that the academic year 1973-74 [plaintiff's third probationary year] be a terminal year for Professor Andreadis."

As a result the university's authorities made a "non-retention" decision, and plaintiff's employment was ended in accordance with the recommendation.

The English department nevertheless continued the employment, in specialty areas other than "Renaissance literature and bibliography," of "student assistants" and "persons employed on a temporary basis." Plaintiff had expressed a willingness to teach the subjects being taught by those persons.

The rationale of the "non-retention" procedure used in plaintiff's case was explained at the trial by the school's vice president for academic affairs. He stated:

"Declining student enrollments create a wide variety of problems in the planning and administration of effective academic programs. Among these is the fact that all disciplines and areas of specialization are not affected equally. Thus, the specialization offered by some faculty members may continue to be in steady or increasing demand (enrollment in the Nursing program, for example, increased by 155.8% between 1971-72 and 1972-73, during the same period when the campus overall FTE [full time equivalent] declined) while student interest in the specialty areas of others drops sharply. [¶] In order to ensure that the campus is able to offer an effective academic program on a continuing basis it is necessary to anticipate such shifts in interest and demand, and to make the sort of decision regarding faculty hiring, retention and tenure which will best enable the campus to be responsive to student interest and requirements. Thus, when it appears that an individual faculty member, because of his or her area of specialization, has relatively less to contribute to the campus's overall program than other faculty members, sound academic management requires that retention and tenure decisions be made accordingly. [¶] Specifically, this means that when two untenured faculty members of equal competence are being considered for an additional probationary year, and one faculty member possesses an academic specialty in relatively low demand —either due to declining enrollments or shifts in student interest—while the second faculty member has a specialization in high demand, proper administration requires that [the] latter be favored over the former in the award of an additional probationary year. To do otherwise would result in a situation where individuals who have relatively little to offer the campus's program would be allowed to proceed toward, and eventually acquire, tenure. Because every campus budget is necessarily limited, the eventual result would be a faculty 'tenured in' with individuals having areas of specialization inconsistent with the present needs of the student body and the academic program. [¶] Traditionally, shifts in student interest from one area to another, resulting in the need to make negative personnel decisions in the cases of those untenured faculty with low demand specialties, have not been considered a 'lack of work' requiring the recourse to formal lay-off procedures. Rather, it is the necessary exercise of discretion by a campus administration, essential to the proper performance of any university's primary educational functions. Without the minimum discretion to make

such responsive personnel decisions, a campus would very quickly become excessively rigid in its program offerings, retaining many faculty which would have the security of life time tenure, but which would have relatively little to offer in terms of the current interests and needs of students."

Plaintiff sought reinstatement of her employment by application to the superior court "for writ of mandate and injunctive and declaratory relief." She appeals from an adverse judgment thereafter entered.

We have concluded that the appeal is without merit and that the judgment of the superior court must be affirmed. Our reasons follow.

It seems proper to state at this point that plaintiff makes no contention that the chairman of the English department, or the vice president for academic affairs, inaccurately evaluated the problems under discussion. Nor is it contended that her "non-retention" decision was made in bad faith or as retaliation for an exercise of constitutional, or other, rights. And she appears to agree that the defendant Board of Trustees of the California State University and Colleges (hereafter Trustees) could legally have enacted a regulation authorizing the "non-retention" procedure under which she was terminated. Her contention is simply that the Trustees had adopted a contrary regulation which forbade such procedure, at least as it was followed in her case.

■ The Trustees' regulation, upon which plaintiff relies, is section 43202 of article 7 of title 5 of the California Administrative Code. It provides:

"Order of Layoff. (a) Whenever a determination has been made that there is a lack of funds or lack of work, employees in a class or teaching service area to be reduced shall be laid off in the following order:

"(1) The Chancellor or president may at his discretion, without regard to the class or teaching service area to be reduced, separate from service any student assistant, instructor for extension service, person employed on a temporary basis, or, with respect to employment in a summer session, any member of the faculty of a campus summer session. Persons described in this paragraph, if performing the same or comparable work as that performed by a probationary or permanent employee, shall be separated before any probationary or permanent employee desiring to

continue in employment is laid off pursuant to the provisions of this article.

"(2) Probationary employees not employed on a temporary basis, without regard to length of service.

"(3) Permanent employees: . . ."

Plaintiff contends that under section 43202, as a "probationary employee not employed on a temporary basis" (see subd. (a)(2)), she was entitled to priority of employment over the "student assistants" and "persons employed on a temporary basis" (see subd. (a)(1)), who continued teaching in other specialty areas of the English department.

Defendants first respond that by its terms section 43202 is inapplicable to plaintiff's case, for the "layoff" priorities of the regulation are explicitly made to apply only when "a determination has been made that there is a lack of funds or lack of work, . . ." They insist that here there was neither such a "determination," nor such a "lack of funds or lack of work."

Defendants, as indicated by the vice president for academic affairs, have always interpreted the "lack of funds or lack of work" of section 43202 as existing when, by reason of legislative action or other cause, necessary funds or areas of academic work are discontinued. In such a situation the section's priority of employment rights is fully recognized, and "layoffs" are made in an impersonal manner. Particularly, they urge, the shifting of student emphasis from one course to another has never been considered "lack of work," requiring that probationary faculty members teaching courses with waning student enrollment be retained in other areas for which they are relatively unsuited by training and experience.

The superior court concurred in defendants' interpretation of section 43202. It found: "Petitioner Andreadis was non-retained by the University because of her lack of potential professional contribution to the Department of English and to the University, . . . [¶] An unanticipated or immediate lack of work or lack of funds was not a reason for petitioner Andreadis' non-retention."

As further justification for their interpretation of section 43202, defendants point to a companion regulation of the Trustees. It is section

43200, and it is also to be found in article 7 of title 5 of the Administrative Code. Section 43200, as relevant, states: ". . . It shall be the policy of the California State University and Colleges to provide stability of employment by foreseeing and avoiding unnecessary reductions in staff. However, when this is not possible due to lack of funds or lack of work, the staff shall be reduced in accordance with this article....."

Defendants contend that this duty to foresee and avoid unnecessary staff reductions except where such foresight and avoidance is rendered impossible from lack of funds or lack of work, is reasonably given effect by the "non-retention" procedure. This procedure, they assert, prevents probationary teaching employees from being moved on to permanent employment, or "tenure," under circumstances where they will surely cause overstaffing, and hence eventual unnecessary reduction, of the permanent faculty in the area of their specialty and expertise.

Our task is the determination whether defendants', and the trial court's, interpretation of sections 43200 and 43202 was reasonable.

"Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies." (*Cal. Drive-in Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, 292 [140 P. 657, 147 A.L.R. 1028].) The construction by such an administrative agency of one of its own regulations is accordingly entitled to "great respect by the courts, and will be upheld, if not clearly erroneous." (*Los Angeles* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10].)

The stated purpose of section 43200, "to provide stability of employment by foreseeing and avoiding unnecessary reductions in staff," is patently in furtherance of sound public, and academic, policy.

It seems reasonable to conclude that the demands of advanced education require that specialized courses be taught by those trained and experienced in such specialties. A practice, when lessened student interest and enrollment in such an academic area require a reduction in its professorial staff, of assigning one or more of its members to teaching duties with which they are relatively unfamiliar, would necessarily dilute the quality of the school's educational programs. On the other hand, allowing a probationary employee to continue in an already overstaffed teaching area of his or her specialty and expertise, and thus acquire

tenure, would inevitably require a future reduction of the permanent faculty staff—a result which would frustrate section 43200's policy of "foreseeing and avoiding unnecessary reductions in staff."

Accordingly, defendants' interpretation of the subject regulations is found to be reasonable, and certainly not clearly erroneous. (See *Los Angeles* v. *Superior Court, supra,* 17 Cal.2d 707, 712.)

We observe no conflict between sections 43200 and 43202. Were we to assume such a conflict, it would appear that defendants' interpretation of them reasonably reconciles section 43200's duty to foresee and avoid unnecessary reductions in staff, with the priority of employment provisions of section 43202. " '[P]ertinent sections of all the codes must be read together and harmonized if possible.' " (*Sullivan* v. *Superior Court,* 29 Cal.App.3d 64, 72-73 [105 Cal.Rptr. 241].)

■ We are aided in our determination by the case of *Mabey* v. *Reagan* (9th Cir. 1976) 537 F.2d 1036, which also concerned the regulations here at issue. Reversing a contrary conclusion of the district court (*Mabey* v. *Reagan,* 376 F.Supp. 216), the Court of Appeals held that "judicial reaction should not be to foreclose the non-retention option when overstaffing is a legitimate reason." It was stated: "[N]on-retention decisions differ significantly from the layoff decisions. The latter procedure gives the president or Chancellor only limited discretion with respect to individuals, while the former gives them almost complete discretion. . . ." "Overstaffing within a particular department naturally affects the non-retention decision. A college has limited funds and must elect to spend them in an optimal way. Allocating those funds encompasses decisions not to reappoint probationary faculty, even if they are well qualified."

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.