Dear Senate Pierce,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Is a trust relationship created between the employer andemployee with respect to compensation withheld pursuant to anemployer-sponsored deferred compensation plan?
 2. Do deposits of deferred compensation funds have to becollateralized in the same manner as other public monies?
 I.
¶ 1 Your questions concern deferred compensation plans sponsored by public employers. The Internal Revenue Code authorizes state and local governments to establish deferred compensation programs for their employees. This authorization is codified at 26 U.S.C.A. 457, thus, such deferred compensation plans are often referred to as "457 plans."
¶ 2 Participation in an eligible 457 plan affects the year in which compensation is includable in gross income:
 [A]ny amount of compensation deferred under the plan, and any income attributable to the amounts so deferred, shall be includable in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary.
26 U.S.C.A. 457(a).
¶ 3 Because amounts deferred under an eligible 457 plan are usually not "made available"[1] to a participant until retirement, when the participant's tax rate is lower, a tax advantage is thereby achieved.
¶ 4 Section 457 contains numerous requirements for an eligible deferred compensation plan. In addition to restrictions on the timing of distributions, section 457 limits the amount which can be contributed to an eligible plan in any one tax year, allows for transfers between certain plans, and contains minimum distribution requirements. However, the most salient requirement for the purpose of your first question is that all deferred compensation, income attributable to such amounts, property, or rights remain the sole property of the employer subject only to the claims of the employer's general creditors.26 U.S.C.A. 457(b)(4) and (6).
¶ 5 The Oklahoma Statutes authorize the State, political subdivisions, municipalities and other local governments to enter into written agreements to defer a portion of their employees' compensation. Such entities:
 [M]ay enter into a written agreement to defer a portion of any employee's compensation which is derived from a state or local government. The compensation to be deferred shall be subject to any federal limitations imposed by the Internal Revenue Code.
74 O.S. 1701 (1990).
¶ 6 Because this statute specifically adopts the requirements of the Internal Revenue Code, it is clear that the Legislature intended it to be interpreted in such a way as to make the compensation eligible for tax deferred treatment under section 457.
¶ 7 There are two primary types of relationships potentially created when an employee elects to participate in a government sponsored 457 plan. The first is debtor/creditor, with the employer assuming a contractual obligation to pay over deferred income in accordance with the plan agreement. The second is trustee/beneficiary, where the employer additionally assumes certain equitable duties to manage each employee's deferred compensation in a certain manner.
¶ 8 The key to determining the nature of the relationship created is the Internal Revenue Code's requirement that all deferred compensation and proceeds remain the sole property of the employer, subject only to the employer's general creditors. It is our opinion that this requirement is inconsistent with the idea that a trust relationship exists with regard to compensation deferred under a 457 plan.
¶ 9 A trust is defined by the Restatement of Trusts as:
 a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.
Restatement (Second) of Trusts, 2 (1959).
¶ 10 Thus, the primary characteristic of a trust is the separation of the legal and beneficial interests in the trust property.
¶ 11 The Restatement also clearly states that a "debt is not a trust." Restatement, 12. The official comments to section 12 note two distinguishing characteristics between a debt and a trust. First, the beneficiary of a trust has an actual interest in the trust property whereas a creditor merely has a personal claim against the debtor. Comment (a) to the Restatement, 12. Second, a trust beneficiary can assert a priority interest in the trust property or its proceeds as against the general creditors of the trustee.
¶ 12 A creditor is not entitled to the money lent in priority to other creditors, even if the borrower retains the actual money which was lent or its proceeds can be traced. Comment (f) to the Restatement, 12.
¶ 13 Furthermore, Comment k to section 12 specifically addresses a deferred payment situation, albeit in the context of insurance:
 When the insured or the beneficiary of a life insurance policy exercises an option under which the insurance company makes deferred payments, the company does not become trustee unless it is under a duty to segregate and hold and administer as a separate fund the proceeds of the policy, and does so. Where, as is almost always, if not always, the case, the payments are to be made out of the general assets of the insurance company, it holds nothing in trust and is not a trustee but is a debtor.
Restatement (Second) of Trusts, 12 (Comment k) (1959).
¶ 14 The distinctions between a trust and an ordinary contractual debt were also recognized by the Oklahoma Supreme Court in McFarling v. Demco, Inc., 546 P.2d 625 (Okla. 1976), quoting from Comments (a) and (b) of the Restatement (Second) of Trusts, 12.
¶ 15 Because section 457 specifically states that the deferred compensation and proceeds are solely the property of the employer, there is no way to infer an intent to separate the legal and beneficial interests in the deferred compensation. Moreover, section 457 provides that the deferred compensation is subject only to the claims of the employer's general creditors. This is the remedy of a creditor, not that of the beneficiary of a trust. It thus appears that the relationship created is one of debtor/creditor rather than trustee/beneficiary.
¶ 16 This was indeed the holding of the one reported case to decide this issue. In Herrick v. State of California,196 Cal. Rptr. 663, 149 Cal. App. 3d 156 (1983), the participants in California's deferred compensation plan challenged the method for assessing and collecting administrative costs. Specifically, the participants argued that in failing to account to employees for the interest on their deferred compensation while it rested in a clearing account, the state breached its fiduciary duties. The court rejected the contention that any trust relationship existed between the state and the deferred compensation participants. The court found that section 457's exclusion of the purported beneficiaries from any interest in plan funds was inconsistent with the existence of a trust.
¶ 17 Therefore, it appears that the relationship between an employer and employee participant in a deferred compensation plan is that of debtor/creditor. Any attempt to create a trust relationship would give the participant a beneficial interest in the deferred compensation, and the right to pursue those funds in priority over other creditors. This would violate the requirements of section 457, which the Oklahoma Legislature adopted by reference in Oklahoma's deferred compensation statute.
 II.
¶ 18 Your second question concerns the need for collateralization of the fund created by the withholding of compensation pursuant to a 457 plan. Title 74 O.S. 1701(A) (1990), specifically enumerates the investment options available to state and local governments which establish deferred compensation plans:
 The state or local governments may, under a written agreement, invest the deferred compensation in life insurance, annuities, United States Treasury Bills, Notes or Bonds, savings accounts and/or mutual funds with a company licensed to do business in the state or in a contract trust or program maintained by a nonprofit organization classified as tax exempt by the Internal Revenue Service of the United States; government.
¶ 19 It is clear from the statute that deferred compensation funds may be invested in several ways. There is no mention of collateralization. The only requirement is that a written investment agreement be made prior to such investments. It should also be noted that the statute does not require investment of any kind. ("The state . . . may . . . invest . . ."). Because the statute does not require the state to invest the funds, it would be necessary to consult the written participation agreement for the particular plan in question to determine if such an obligation had been assumed. Such a factual inquiry is beyond the scope of this opinion.
¶ 20 It is clear, however, from the Internal Revenue Service regulations, that allowing participants to choose from among various investment modes does not make a deferred compensation program an ineligible 457 plan. 26 C.F.R. 1.457-l(b) (1990).
¶ 21 The question then becomes whether the funds must be collateralized (1) in the event they are not invested at all; (2) after they are withheld from the payroll but before they are invested; and (3) while they are invested. The answers to these questions vary slightly dependent upon whether a state or a local government is involved. Thus, our answer will be divided accordingly.
 A. State-Sponsored plans
¶ 22 Title 74 O.S. 1705 (1990) creates a fund called "The Oklahoma State Employees Deferred Compensation Plan Fund." It is described by the statute as follows:
 There is hereby created in the State Treasury a revolving fund for the Oklahoma State Employees Deferred Compensation Plan. The fund shall be designated "The Oklahoma State Employees Deferred Compensation Plan Fund." The revolving fund shall be a continuing fund and shall consist of all monies other than appropriated funds received by the Oklahoma State Employees Deferred Compensation Plan pursuant to statutory authority. Monies accruing to the fund may be expended by the Oklahoma Public Employees Retirement System pursuant to the laws of this state.
¶ 23 The revolving fund established by 74 O.S. 1705 is "created in the State Treasury." Under 74 O.S. 362 (1981), the State Treasurer has charge of all public monies paid into the State Treasury. Title 62 O.S. 71(D) (1990), provides that public funds in the hands of the State Treasurer shall not be deposited in selected banks, savings banks or savings and loan associations and credit unions in an amount to exceed the combined limit of deposit insurance plus approved legal securities pledged by such financial institutions. Thus, state-sponsored deferred compensation funds which are not invested at all or which are held in the revolving fund prior to investment[2] must be insured or collateralized in the same manner as any other funds in the custody of the State Treasurer.[3]
¶ 24 Once the deferred compensation is removed from the fund for investment in the manner authorized by 74 O.S. 1701, the question as to whether insurance or collateralization is required becomes less clear.
¶ 25 The Oklahoma Public Employees Retirement System Board is responsible for establishing rules and regulations and participation agreement forms for the deferred compensation programs of state government. 74 O.S. 1701(B) (1990). Rule 403.1 of the Rules and Regulations for the Oklahoma Public Employees Retirement System provides that investments in a savings and loan must be fully insured by the Federal Savings and Loan Insurance Corporation:
 403.1 Make deposits through a savings account in an institution or institutions as determined by the Board.
 All deposits of public funds into a savings and loan account are governed by 62 O.S. 513 (1981). This statute authorizes deposits "in an amount and to the extent that such deposit is fully insured by the Federal Savings and Loan Insurance Corporation."
 This statute limits deposits in Great Western Savings to the maximum FSLIC coverage of $100,000.00 per account.
 For this reason no Participant will be permitted to deposit more than $95,000.00 in the savings account. This restriction is needed to ensure that total individual deposits do not exceed the maximum value established by law.
¶ 26 Ordinarily, the construction of a statute by an agency charged with its enforcement must be given great weight. UnitedAirlines, Inc. v. State Board of Equalization, 789 P.2d 1305,1311 (Okla. 1990). However, it appears that the Board's reliance on 62 O.S. 513 (1981) to support its Regulation 403.1 is misplaced. 62 O.S. 513 reads as follows:
 The State Treasurer, and the treasurers of counties, school districts, cities, towns, municipalities and any other political subdivision of the state, and any other officer, board, department or commission having custody, control and management of any public or trust fund or funds charged with the safekeeping and deposit of said fund or funds are hereby specifically authorized to deposit said fund or funds in any federally-insured building and loan association wherever located, whether federally or state chartered, in an amount and to the extent that such deposit is fully insured by the Federal Savings and Loan Insurance Corporation or any other instrumentality of the United States Government. When any such insured deposit is made it shall not be necessary . . . to require any security, and such insurance shall be accepted in lieu of any security, restriction or other limitation now required or imposed by law upon the deposit of public funds.
¶ 27 The statute appears to merely authorize substitution of deposit insurance when security of public funds is required by law. It does not in and of itself require the insurance or collateralization of public funds.
¶ 28 Returning now to 74 O.S. 1701(A) (1990), it does not appear that any restrictions with regard to security or insurance are imposed upon the investments authorized therein. There is only the requirement that there be a written agreement between the employer and the participant prior to investment. Nor does it appear that insurance or collateralization of those investments is required by any other statute.
¶ 29 In summary, as to state-sponsored plans it appears that collateralization or deposit insurance of deferred compensation funds is required while they rest in the Oklahoma State Employees Deferred Compensation Plan Fund in the State Treasury. However, once those funds are withdrawn by the Oklahoma Public Employees Retirement System the only requirement is that they be invested pursuant to a written agreement with the participant and in only those investments authorized by 74 O.S. 1701(A) (1990).
 B. Local Plans
¶ 30 Oklahoma's deferred compensation statute does not direct local governments to establish a particular fund for the management of compensation deferred under a 457 plan. Thus, it is necessary to look to the general statutes governing local custodians of public funds.
¶ 31 Title 62 O.S. 516.5 (1990), requires the treasurer of every county, city, town and board of education to deposit daily all funds and monies of whatsoever kind which come into his possession in banks, trust companies, credit unions or savings and loan associations, provided that no deposit:
 shall be made or accepted in excess of the sum set out in the effective statement or statements of the State Treasurer as by the unit collateral provided, plus the amount or amounts insured . . . plus any amounts secured by collateral securities pledged under other laws to which this act is cumulative.
Id.
¶ 32 Thus, to the extent the treasurer of the local governing body is the one to whom possession of the deferred compensation is given, insurance or collateralization is required until such time as those funds are withdrawn for investment.[4] As with the state-sponsored plan, there appear to be no restrictions as to insurance or collateralization of invested deferred compensation funds once they are invested by the employer. As long as there is a written agreement with the participant, and the funds are only invested in the ways prescribed by 74 O.S.1701(A), all statutory requirements have been met.
¶ 33 Therefore, with regard to local plans, insurance or collateralization is required for funds remitted to the local treasurer for deposit prior to investment. However, collateralization is not required once the funds are invested in accordance with the participation agreement and the deferred compensation statute.
¶ 34 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. A trust relationship is not created between the employerand employee with respect to compensation withheld pursuant to anemployer-sponsored deferred compensation plan established under74 O.S. 1701 (1990) et seq.
 2. (a) Deposits of deferred compensation into The OklahomaState Employees Deferred Compensation Plan Fund are subject tothe same requirements regarding insurance or security collateralas any other fund in the custody of the State Treasurer untilsuch time as the funds are withdrawn for investment purposes.Funds invested by the Oklahoma Public Employees Retirement Systempursuant to 74 O.S. 1701(A) (1990), are not subject to anyrequirements regarding collateral or deposit insurance. However,investments are limited to those specifically authorized by 74O.S. 1701(A) (1990), and must be made pursuant to a writtenagreement with the plan participant.
 (b) Deferred compensation which is remitted to a localtreasurer by a local government employer must be deposited andeither insured or collateralized in the same manner as otherfunds coming into the hands of the local treasurer pursuant to62 O.S. 516.5 (1990). Insurance or collateralization is notrequired once the funds are invested pursuant to 74 O.S.1701(A) (1990).
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
SHARON K. O'ROKE ASSISTANT ATTORNEY GENERAL
[1] Amounts may not be made available to participants until the earlier of (1) the calendar year in which the participant reaches age 70 1/2; (2) separation from service; or (3) an unforeseeable emergency. 26 U.S.C. § 457 (d)(1)(A).
[2] Title 74 O.S.Supp. 1900, § 1701[74-1701], was amended in 1990 to add a subsection D. This subsection requires that the transfer of participation amounts to the investment option chosen by the state employee be accomplished within ten business days. 1990 Okla. Sess. Laws, c. 291, § 1.
[3] Title 60 O.S.Supp. 1990, § 89.2[60-89.2], enumerates the investment options available to the State Treasurer.
[4] Title 62 O.S.Supp. 1990, § 348.1[62-348.1], enumerates the investment options available to a local treasurer when the appropriate governing body authorizes the investment of monies in his custody.